ANDREW FRANCISCO, District of Columbia Bar No. 1619332
Asst. Federal Public Defender
104 South Wolcott Street, Suite 601
Casper, Wyoming 82601
Phone: 307-772-2781
Fax: 307-772-2788
andrew.francisco@fd.org

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

UNITED STATES OF AMERICA,

                        Plaintiff,

            v.

JAMES NEMETH,                                    Case No. 24-CR-12-SWS

                        Defendant.

---

## MOTION TO COMPEL
## THE GOVERNMENT TO PROVIDE REQUESTED DISCOVERY

---

Pursuant to Federal Rule of Criminal Procedure 16, *Napue v. Illinois*, 360 U.S. 264 (1959), *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *United States v. Agurs*, 427 U.S. 97 (1976), *United States v. Bagley*, 473 U.S. 667 (1985), *Kyles v. Whitley*, 514 U.S. 419 (1995), *Florida v. Harris*, 568 U.S. 237 (2012), *United States v. Cates*, 73 F.4th 795 (10th Cir. 2023), and the Standard Pre-Trial Order ("PTO") issued by this Court on January 19, 2024 (collectively referred to hereinafter as the government's "Discovery Obligations"), James Nemeth respectfully requests this Court compel the government to produce the discovery requested on March 6, 2024, and again on March 24, 2024 (collectively

referred to hereinafter as "Discovery Requests"). The items described in the Discovery Requests are within the government's possession and control and are material to Mr. Nemeth's defense. Accordingly, the Court should compel the government to produce them.

## BACKGROUND

Mr. Nemeth initially was charged by Complaint with one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B), and one count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (ECF No. 1.) He was taken into federal custody on December 27, 2023. (ECF No. 11.) Mr. Nemeth's initial appearance on the Complaint was held December 28, 2024, and his detention hearing followed on January 3, 2024. (ECF Nos. 5, 14.) He was ordered to remain in custody pending trial. (ECF No. 16.) Mr. Nemeth subsequently was indicted on January 10, 2024, on the two counts described in the Complaint and an additional count of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (ECF No. 17.) Mr. Nemeth was arraigned on the Indictment on January 22, 2024, and his jury trial was set for March 11, 2024. (ECF No. 22.) The relevant facts of the case are provided in the contemporaneously filed motion to suppress.

Chief United States Magistrate Judge Kelly H. Rankin entered the SPO on the same day. (ECF No. 24). The SPO directed the government to provide the following information (in relevant part) to Mr. Nemeth within 14 days:

> [b]ooks, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are material to the

preparation of the defendant's defense, or which the government intends
to use as evidence at trial to prove its case in chief, or which were
obtained from or belong to the defendant[.]

. . . .

The government must <u>promptly</u> disclose to the defendant all material
for which disclosure is mandated by *Brady v. Maryland*, 373 U.S. 83
(1963), and its progeny. Pursuant to the Due Process Protections Act
and Fed. R. Crim. P. 5(f), the government is reminded of its obligations
under *Brady v. Maryland* and its progeny to disclose evidence that is
favorable to the defendant and material to the defendant's guilt or
punishment.

*Id.* On Defendant's unopposed motion, the Court reset Mr. Nemeth's trial for

April 29, 2024. (ECF No. 29.) Mr. Nemeth was released on bond on February

15, 2024. (ECF No. 39.) On March 7, 2024, the Court denied Mr. Nemeth's

second motion for an ends-of-justice continuance. (ECF No. 42.)

The government produced discovery on January 19th, 26th, and 31st and

February 7th, 13th, 15th, 16th, and 29th. On March 6, 2024, and again on March

24, 2024, defense requested records related to K-9 Duke and his handler, Natrona

County Sheriff's Deputy Dexter Bryant. The requests included the types of training

that the dog and handler received and records of their maintenance training and

deployments for the months leading up to November 2023. Defense counsel

provided a declaration from their retained expert, Jerry Potter, who has over 13

years of experience as a dog handler and trainer. In his declaration, Mr. Potter

describes the discovery that he is typically provided and reviews in assessing a dog

alert and his concerns regarding the reliability of the dog alerts in Mr. Nemeth's

case. The declaration and Mr. Potter's CV are provided in Exhibit A. The

declaration addresses the reasons that Mr. Potter needs to review the training records that have been requested but not provided to date.

Apart from two single-page certifications proving that the dog in question was certified at the time of the purported alerts, the government has refused to provide the requested historical canine records, objecting pursuant to the Tenth Circuit's recent decision in *United States v. Cates*. The government limited its additional disclosures to documentation of the Natrona County Sheriff's Office's current policies and procedures on the use of detection dogs, which it intends to produce only as a courtesy. The conclusory, one-page certifications are provided as Exhibit B.

The requested discovery relates to the issues outlined in the motion to suppress evidence found in violation of Mr. Nemeth's Fourth Amendment rights against unreasonable searches and seizures. Law enforcement applied for a warrant to search Mr. Nemeth's car and hotel room after Deputy Bryant—the handler—asserted that K-9 Duke positively alerted to the presence of drugs in each location. The motion challenges whether the dog in fact alerted—a behavioral change that was not apparent to the defense's dog expert—and relatedly, the reliability of the dog given the several indications of the handler's confirmation bias. Moreover, the Natrona County Sheriff's Office requires that the requested information be generated and maintained pursuant to section 9.5 of its 2018 Policy and Procedure Manual, provided as Exhibit C, which indicates that it is readily available to the

government and within its control. Under the circumstances of this case, the government's reliance on *Cates* is misplaced.

## LEGAL STANDARD AND ARGUMENT

This Court should order the government to produce the material identified in the Discovery Requests. As an initial matter, the government must honor Mr. Nemeth's Due Process rights to particular discovery. Due Process requires the government to turn over to the defense any exculpatory or impeachment evidence, within its possession or control. *See Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 153–54; *Bagley,* 473 U.S. at 678. The government is required to turn over *Brady* and *Giglio* material independent of any other discovery obligation.

Rule 16(a) of the Federal Rules of Criminal Procedure also specifies items that the government must produce upon a defendant's request. The government is required to permit a defendant to:

> inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E); *Cates*, 73 F.4th at 812 ("Under Rule 16, 'a criminal defendant enjoys a right to discovery of information that is material to preparing the defense.'" (quoting *United States v. Simpson*, 845 F.3d 1039, 1056 (10th Cir. 2017))). A "material" item in this context is any evidence that "would be helpful to the defense," *id.* (quoting 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 254 n.13 (4th ed. 2022)), and likely to "play an important

role in uncovering admissible evidence, aid[] witness preparation, . . . or assist[] impeachment or rebuttal," *id.* (quoting *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (internal quotation marks and citation omitted)).

Rule 16(a) applies to items "within the government's possession, custody, or control." Fed. R. Crim. P. 16(a)(1)(E). Evidence is within the "possession, custody, or control" of the government if it is in the hands of a governmental investigatory agency closely connected to the prosecutor. Moreover, the government has a continuing duty to disclose any evidence that is subject to discovery under Rule 16(a).

The Court also has broad authority to regulate discovery in a criminal case, including the power to enter and enforce its own discovery orders. As a result, the Court has the authority to enter the SPO and to require the government to comply with that order. Further, Rule 16 enumerates sanctions available for a party who fails to comply with its discovery obligations. When a party fails to comply with its obligations, the Court can:

> (A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions;
> (B) grant a continuance;
> (C) prohibit that party from introducing the undisclosed evidence; or
> (D) enter any other order that is just under the circumstances.

Fed. R. Crim. P. 16(d). A court's imposition of a particular sanction under Rule 16(d) is within its discretion.

Here, the Discovery Requests directly relate to Mr. Nemeth's defense in this case and therefore should be provided in full pursuant to Rule 16(a)(1)(E).

Specifically, the requested information relates to whether K-9 Duke alerted on November 11, 2023, after sniffs of Mr. Nemeth's car and the door to his hotel room. As discussed more fully in the contemporaneously filed motion to suppress, the "dog alert" is not obvious in the body worn camera footage and is inconsistent with Deputy Bryant's report. Whether K-9 Duke alerted and how he was trained to alert are at the heart of the contested issue.

Mr. Potter notes that he "typically watch[es] dash and/or body worn camera footage of the canine working, review[s] training and utilization records, certification records and departmental standard operating procedures." Ex. A. at 1. Such records are regularly reviewed by experts in determining whether there was a dog alert and whether it was reliable. The dog's records are also introduced as exhibits or through testimony at evidentiary hearings and play an important role in the district court's evaluation of probable cause. *See generally Florida v. Harris*, 568 U.S. 237, 247–48 (2013); *United States v. Beltran*, 2018 WL 5720247, at *13 (D. Kan. Nov. 1, 2018) (providing 120 pages of reports documenting the dog's performance in controlled environments and information about the dog's training); *United States v. Jordan*, 455 F. Supp. 3d 1247 (D. Utah April 21, 2020) (engaging in extensive analysis of the dog's training); *United States v. Wilson*, 995 F. Supp. 2d 455, 475 (W.D.N.C. 2014) (focusing on the dog's alert behavior). Moreover, if Deputy Bryant endorses at an evidentiary hearing that Duke alerted and that the alert was reliable, these records would form the basis of defense's cross-examination.

The Supreme Court explicitly mentioned the potential relevance of such records in *Florida v. Harris* when there is a question regarding the dog's alert, specifically including the role of effective cross-examination:

> A defendant, however, must have an opportunity to challenge such evidence of a dog's reliability, whether by cross-examining the testifying officer or by introducing his own fact or expert witnesses. The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty. So too, **the defendant may examine how the dog (or handler) performed in the assessments made in those settings**. Indeed, evidence of the dog's (or handler's) history in the field, although susceptible to the kind of misinterpretation we have discussed, may sometimes be relevant.

*Fla. v. Harris*, 568 U.S. at 247 (emphasis added). At least four federal circuit courts agree that *Harris* affirms a defendant's right to challenge a certified drug dog's reliability when the government attempts to rely on the dog's positive alert to establish probable cause to support a search. *See Cates*, 73 F.4th at 813–14*; United States v. Foreste*, 780 F.3d 518, 528–29 (2d Cir. 2015); *United States v. Salgado*, 761 F.3d 861, 867 (8th Cir. 2014); *United States v. Thomas*, 726 F.3d 1086, 1096–97 (9th Cir. 2013).

The Second and Ninth Circuits read *Harris* as establishing the inherent materiality of a dog's training and performance records under Rule 16 when a defendant seeks to challenge the dog's reliability in a suppression motion. In *United States v. Foreste*, the Second Circuit reasoned: Harris's "principle that a defendant 'must have an opportunity to challenge such evidence of a dog's reliability,' would be stripped of its value if the defendant were not entitled to discover the evidence on which he would base such a challenge." 780 F.3d at 529 (quoting *Harris*, 568 U.S. at

247). The Second Circuit ultimately reversed the district court for denying the defendant's motion to compel the government to produce the drug dog's field-performance records. *Id.*

Similarly, in *United States v. Thomas*, the Ninth Circuit held that the government must produce a drug dog's training and performance records under Rule 16 whenever the defense puts the dog's alert at issue. 726 F.3d at 1096. Recognizing such records as inherently material under Rule 16, the *Thomas* court likewise relies on *Harris* to support its conclusion that a dog's training and performance records are "crucial to the defendant's ability to assess the dog's reliability" and to "conduct an effective cross-examination of the dog's handler at the suppression hearing." *Id.*

In contrast, the Tenth Circuit recently concluded that *Harris* establishes that "a criminal defendant does *not* have an automatic right to historical canine records." *Cates*, 73 F.4th at 813 (emphasis added). Although it acknowledges the relevance of dog training and performance records to the issue of reliability, *Harris*, according to the Tenth Circuit, is silent as to the "case-by-case *materiality* of such records[.]" *Id.* Nonetheless, even in the Tenth Circuit such records may be material. The test is whether the defendant puts forth evidence that calls into question the drug dog's reliability. *Id.* at 814 (10th Cir. 2023) ("Because Cates failed to place in question the government's [K-9 reliability] showing, the district court did not err in rejecting Cates's request for additional training records.")

9

Although Mr. Nemeth maintains that the Tenth Circuit's interpretation of *Harris* is flatly incorrect, and that the requested records are inherently material to a suppression motion under *Harris* and thus discoverable as of right under Rule 16,[1] he nevertheless has made the requisite "threshold showing" needed to undermine the validity and reliability of the dog's certification. *See Cates*, 73 F.4th at 813 ("[T]he district court concluded that Cates was not automatically entitled to field-performance records, absent a threshold showing that cast doubt on [K-9] May's reliability. This is in line with *Harris*.") Mr. Potter notes in his declaration that K-9 Duke is a "passive responder" yet he does not observe clear and consistent passive responses from Duke in the bodycam videos of the searches. (Ex. A.) Furthermore, he observes affirmative indications of confirmation bias that could influence the "actions and interpretations of a dog's behavior." (*Id.*) In particular, this includes the facts that Deputy Bryant knew the searched vehicle was suspected of drug trafficking and that officers had crowded around Room 140 while Duke searched, with one even inquiring if Duke had alerted on Mr. Nemeth's hotel room door *before* any acknowledgement of an alert by Duke's handler. (*Id.* at 2–3.) These issues, as well as the discrepancies between the reports and video, lead Mr. Potter

---

[1] As the Second and Ninth Circuits rightly recognize, the *Harris* decision necessarily contemplates that a defendant exercising his right to challenge the drug dog's reliability has access to the dog's underlying training and performance records, as evidenced by the Supreme Court's examples of permissible attacks on the dog's reliability. *See* 568 U.S. at 247 ("The defendant, for example, may contest the adequacy of a certification or training program, perhaps asserting that its standards are too lax or its methods faulty. So too, the defendant may examine how the dog (or handler) performed in the assessments made in those settings."). It is difficult to imagine how a defendant could ever successfully contest the adequacy of a certification or training program, or the dog's performance in such programs, without access to the underlying records documenting those details.

to "question the accuracy of the information in the search warrant affidavit." (*Id.* at 3.) Given the Defense expert's declaration, the requested items are material to whether Duke in fact alerted or instead merely responded to his handler's bias. As such, Tenth Circuit caselaw counsels that this Court should compel the government to produce the requested records, which in light of these stated concerns undoubtedly "would be helpful to the defense." *Cates*, 73 F.4th at 812; *see also United States v. Lambert*, 351 F.Supp.2d 1154, 1162 (D.Kan.2004) ("There may be circumstances where a more complete investigation is required, because the reliability presumed from certification and training is subject to question. These may include that . . . the circumstances of the particular search raise issues regarding the dog's reliability.")

The information defense has requested specifically relates to the question of whether K-9 Duke alerted and is the primary evidence of whether law enforcement had probable cause to support the search warrant affidavit in this case. Although decided before the Supreme Court's holding in *Harris*, the Ninth Circuit's discussion in *United States v. Cedano-Arellano* was prescient and outlines the import of providing the requested training records. 332 F.3d 568 (9th 2003). The opinion similarly endorses how crucial it is for defense to be able to assess the dog's reliability and to be able to conduct effective cross-examination at a contested evidentiary hearing where the dog's alert—or lack thereof—is the focus. *Cedano-Arellano*, 332 F.3d at 571. The opinion explains that the training and certification records are the basis for cross-examination of a handler's claims regarding the dog's

11

behavioral changes and the reliability of the dog's performance. *Id; see also United States v. Morales*, 489 F. Supp. 2d 1250, 1260 (D.N.M. 2007) ("[A] dog alert might not give rise to probable cause if the particular dog has a poor accuracy record.")

The information requested is directly related to the dog's reliability and whether there was an alert. It is essential to establish that law enforcement violated Mr. Nemeth's Fourth Amendment rights when they searched his car and hotel room and to allow defense counsel to properly prepare for a contested hearing on the motion to suppress. Moreover, the information sought in the Discovery Requests is within the possession and control of the government because it is in the custody of the Natrona County Sheriff's Office, the investigatory agency relied on by the government to prove its charges in this case. The policies of that agency require the creation and retention of such evidence. (*See* Ex. C.) As a result, the government is required by its Discovery Obligations to provide the material requested in the Discovery Requests.

## CONCLUSION

Based on the forgoing, Mr. Nemeth respectfully requests this Court compel the government to produce the discovery requested most recently on March 24, 2024, specifically K-9 Duke and Deputy Bryant's training records, training and qualifications, maintenance logs, and performance history and deployment records as outlined in Mr. Potter's declaration. These items will aid in expert witness preparation and aid in impeaching the government's witnesses. As such, the

requested items are material to Mr. Nemeth's defense and should be produced

pursuant to the government's Discovery Obligations.

DATED this 25th day of March 2024.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender

/s/ *Andrew Francisco*
Andrew Francisco
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2024, the foregoing was electronically filed
and consequently served on counsel of record.

/s/ *Andrew Francisco*
Andrew Francisco